**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TENNIE L. S.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cv-00399-CVE-SH** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Pursuant to 42 U.S.C. § 405(g), Plaintiff Tennie L. S. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f. For the reasons explained below, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

### I.    Disability Determination and Standard of Review

Under the Act, an individual is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). These impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er]

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps, assuming the impairment is not conclusively presumed to be disabling. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue,* 511 F.3d 1270, 1272 (10th Cir. 2008).

## II.    Background and Procedural History

On August 9, 2018, Plaintiff applied for Title XVI benefits with a protected filing date of July 23, 2018.  (R. 12, 170-78.)  Plaintiff alleges that she has been unable to work since an amended onset date of July 23, 2018, due to stage 4 liver cirrhosis, arthritis in her left hand, pain and reduced vision in her left eye, hepatitis C, diabetes, and neuropathy in her hands and feet.  (R. 39, 203.) Plaintiff was 45 years old on the date of the ALJ's decision.  (R. 23, 170.)  She has an 8th grade education and no past relevant work.  (R. 39, 204.)

Plaintiff's claim for benefits was denied initially and on reconsideration, and she requested a hearing.  (R. 73-96, 113-14.)  ALJ James Stewart conducted the administrative hearing and issued a decision on January 16, 2020, finding Plaintiff not disabled.  (R. 12-23, 28-71.)  The Appeals Council denied review on June 8, 2020 (R. 1-5), rendering the Commissioner's decision final.  20 C.F.R. § 416.1481.  Plaintiff timely filed this appeal on August 11, 2020, within 65 days of that order.  (ECF No. 2.)  *See* 20 C.F.R. § 422.210(c).

## III.    The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application and amended alleged onset date.  (R. 14.)  At step two, the ALJ found Plaintiff had the severe impairments of chronic viral hepatitis C, chronic liver disease and cirrhosis of the liver secondary to hepatitis C, obesity, diabetes mellitus type II, insomnia,

anxiety, and depression. (R. 14.) At step three, the ALJ found Plaintiff's impairments did not

meet or equal a listed impairment. (R. 15-16.)

The ALJ then determined Plaintiff had the RFC to perform a limited range of sedentary

work as defined in 20 C.F.R. § 416.967(a), with the following non-exertional limitations:

> [N]o climbing of ladders, ropes, or scaffolds. Stooping, crouching, crawling,
> kneeling, balancing, and climbing ropes or stairs can be done occasionally. Due to
> mental impairments, the claimant can understand, remember, and carryout simple
> or intermediate level instructions, and perform simple and some tasks of
> intermediate level difficulty under routine supervision, such that she is capable of
> doing simple or semi-skilled work. The claimant can relate to supervisors and
> coworkers on a superficial and work related basis and can adapt to a work situation.
> Only occasional contact with the general public.

(R. 16-17.) The ALJ provided a detailed analysis of the evidence that went into this finding.

(R. 17-22.)

At step four, the ALJ found Plaintiff had no past relevant work to analyze (R. 22), so he

proceeded to step five. There, based on the testimony of a vocational expert ("VE"), the ALJ

concluded that Plaintiff could perform occupations existing in significant numbers in the national

economy, including document preparer, semiconductor bonder, and touch up screener. (R. 22-

23.) The ALJ thus found Plaintiff was not disabled. (R. 23.)

**IV.   Issues**

Plaintiff asserts the ALJ erred in multiple ways. As it relates to the RFC, Plaintiff argues

the ALJ did not properly: (1) evaluate Dr. Nick Carroll's consultative opinion (ECF No. 13 at 9-

12); (2) account for limitations caused by her liver disease (*id*. at 3-7); (3) account for her moderate

limitation in concentration, persistence, or pace (*id.* at 7-8); or (4) evaluate her subjective

symptoms (*id*. at 12-14). Plaintiff then asserts the ALJ failed, at step five, to identify a job she

could perform, existing in significant numbers, given the moderate limitation in concentration, persistence, or pace he found at step three (*id.* at 7-9).[2]

## V.     Analysis.

### A.     The ALJ's RFC Determination Applied the Correct Legal Standards and is Supported by Substantial Evidence.

Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence, because he failed to properly evaluate Dr. Carroll's medical opinion and failed to account for all her impairments and limitations.  Plaintiff also asserts that the RFC was flawed due to the ALJ's failure in conducting the consistency analysis of Plaintiff's symptoms.

As noted above, in order to proceed to steps four and five, the ALJ determines a claimant's RFC.  That is, a claimant may have impairment(s) and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 416.945(a)(1).  The claimant's RFC is what's left—"the most [the claimant] can still do despite [their] limitations."  *Id*.  The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record.  *Id*. § 416.920(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings.  20 C.F.R. § 416.913(a).

---

[2] The undersigned has re-organized Plaintiff's arguments for clarity.

A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in four categories of abilities. *Id*. § 416.913(a)(2)(i).  These abilities include the "ability to perform physical demands of work activities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . ."  *Id*. § 416.913(a)(2)(i)(A).  If there is a medical source opinion, it must be considered and addressed, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted."  SSR 96-8p at *7.  The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 416.920c(a).  Instead, the ALJ evaluates the "persuasiveness" of all medical opinions and prior administrative medical findings by considering five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship), (4) specialization, and (5) other factors that tend to support or contradict an opinion or finding.  *Id*. § 416.920c(a) & (c).  Supportability and consistency are the most important factors, and the ALJ must always explain how he considered these two factors in the decision.[3]  *Id*. § 416.920c(b)(2).  The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions or prior administrative medical findings about the same issue that are equally well-supported and consistent with the record, but not identical.  *Id*. § 416.920c(b)(2)-(3).

---

[3] Supportability refers to relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion.  20 C.F.R. § 416.920c(c)(1). Consistency refers to the consistency between a medical opinion "with the evidence form other medical sources and nonmedical sources" in the record.  *Id*. § 416.920c(c)(2).

### 1.    Dr. Carroll's Opinion

Plaintiff asserts the ALJ improperly rejected Dr. Carroll's opinion as to limitations related to her left hand and arm.  The ALJ determined that Dr. Carroll's limitations on Plaintiff's use of her left hand and arm were unpersuasive, because they were not supported by a diagnosis and because they were not consistent with evidence from other sources.  Substantial evidence supports this finding, which applied the correct legal standard.

 Dr. Carroll performed a consultative physical examination of Plaintiff on October 4, 2018. (R. 345-50.)  Plaintiff reported, *inter alia,* stocking/glove neuralgias that made walking too painful when they "flared" and left arm pain, numbness, and weakness that rendered her arm nonfunctional but mobile.  (R. 345.)  On physical examination of Plaintiff's left hand, Dr. Carroll found diffuse moderate/severe sensory loss, reduced grip strength, and full range of motion in her wrist and fingers (R. 346, 349.)  Dr. Carroll stated Plaintiff's left "thumb and pinky" were "impaired" and he indicated Plaintiff had "severe difficulty" manipulating small objects with her left hand but could effectively grasp tools such as a hammer.  (R. 349.)  Dr. Carroll also found reduced range of motion in Plaintiff's left shoulder.  (R. 348.)   He assessed Plaintiff with hepatitis C with cirrhosis, diabetes, peripheral neuropathy not otherwise specified, and left-hand numbness not otherwise specified.  (R. 346.)  Based on Plaintiff's left shoulder range of motion, Dr. Carroll suspected that a shoulder impingement "may be the source" of Plaintiff's left-hand numbness but indicated further testing would be required.  (*Id.*)

In his written opinion, the ALJ thoroughly summarized Dr. Carroll's consultative examination and concluded that his left hand and arm limitations were not persuasive.  (R. 20 & 21.)  In discussing the consistency and supportability of Dr. Carroll's opinion, the ALJ found: (i)  he based his limitations on a single examination; (ii) he did not provide a supporting diagnosis; (iii) no other medical provider identified a shoulder or hand impairment or limitation; (iv) Plaintiff

did not have any shoulder or hand complaints at appointments with her primary care providers before or after Dr. Carroll's examination; and (v) the state agency physicians discounted his "left hand results on grounds that no impairment had been assessed."  (R. 21.)

Plaintiff contends the ALJ failed to properly weigh Dr. Carroll's opinion using the factors set forth in 20 C.F.R. § 416.927.  (ECF No. 13 at 11.)  However, these factors apply only to claims filed before March 27, 2017; for claims filed on or after that date, a different set of rules apply.  20 C.F.R. § 416.927.  As noted above, those rules are found at 20 C.F.R. § 416.920c, and, as also noted above, Plaintiff filed her claim in 2018.  The ALJ appropriately evaluated the persuasiveness of Dr. Carroll's opinion using the factors set forth in § 416.920c.

To the extent Plaintiff argues the ALJ improperly found Dr. Carroll's opinion inconsistent with the state agency physicians' opinions, her argument fails.  (ECF No. 13 at 10-12.)  On October 9, 2018, state agency physician Dr. Sarah Yoakam reviewed the record and concluded Plaintiff could perform the full range of light work.[4]  (R. 80, 83.)  In reaching this conclusion, Dr. Yoakam summarized Dr. Carroll's examination findings and noted there was no medically determinable impairment ("MDI") for Plaintiff's left hand sensory loss or left shoulder decreased range of motion ("rom").  (R. 81.)  Dr. Yoakam additionally stated that even if Plaintiff had a left hand or left shoulder impairment, her function was not limited enough "to change the rating to an allowance."  (*Id.*)  State agency physician Dr. William Oehlert affirmed Dr. Yoakam's findings on review in November 2018.  (R. 92-94.) Thus, Drs. Yoakam and Oehlert sufficiently explained their conclusion that Plaintiff could perform the full range of light work, and contrary to Plaintiff's assertion, they clearly considered Dr. Carroll's consultative examination findings as part of their

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

analysis.  Relatedly, Plaintiff maintains that Dr. Carroll's diagnosis of left shoulder impingement supports the hand and shoulder limitations.  (ECF No. 13 at 12.)  This diagnosis is not borne out by the record, however, because Dr. Carroll stated further testing would be required to diagnose a shoulder impingement.  (R. 346.)  Moreover, the ALJ did not base his consistency factor analysis solely on the state agency physicians' opinions.  As set forth above, the ALJ also found Dr. Carroll's opinion inconsistent with other evidence of record, including Plaintiff's reports to her primary care providers, as well as their findings on examination.  (R. 21.)

Likewise, the undersigned Magistrate Judge rejects Plaintiff's assertion that the ALJ engaged in "picking and choosing" with respect to Dr. Carroll's opinion.  (ECF No. 13 at 10.)  An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo v. Astrue,* 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007)).  This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996).  Without specifying any evidence that the ALJ overlooked, Plaintiff claims the ALJ "engaged in prohibited picking and choosing among findings without the required legitimate explanation" in his analysis of Dr. Carroll's opinion.  (ECF No. 13 at 10.)  This is incorrect.  The ALJ did not simply "pick and choose" the evidence that was favorable to his position, but rather appropriately considered all the evidence, including Dr. Carroll's hand and shoulder findings as set forth above.  Plaintiff fails to identify any other evidence related to her left hand or shoulder that undermines the ALJ's conclusion that she could perform a limited range of sedentary work.

2.      **Liver Disease**

Plaintiff next asserts that the ALJ erred in his RFC assessment, because he failed to account for limitations related to her liver disease.  (ECF No. 13 at 4-6.)  She alleges the ALJ should have included limitations in the RFC for memory loss, shortness of breath, difficulty walking, pain, and fatigue that she experiences because of her liver disease and ascites.  As support, Plaintiff points to an April 2019 treatment note where her primary care provider noted the presence of "fluid wave" in Plaintiff's abdomen (R. 364) and claims the ALJ failed to recognize this finding as indicative of ascites.[5]  (ECF No. 13 at 4.)

The undersigned Magistrate Judge finds no error in the ALJ's analysis of Plaintiff's liver disease.  At the administrative hearing, the ALJ stated he did not see anything in the record about memory problems, and Plaintiff's counsel responded that he understood.  (R. 56.)  The ALJ identified chronic liver disease as a severe impairment at step two (R. 14) and thoroughly discussed Plaintiff's testimony and the findings of her treating, consultative, and reviewing physicians, including her primary care provider's April 2019 positive fluid wave test and the February 2017 mental status examination where her memory was intact, as part of his RFC analysis (R. 19-22).  In discussing the opinion evidence, the ALJ found partially persuasive the state agency physicians' opinion that Plaintiff could perform light work and specifically explained that he further limited Plaintiff to sedentary work due to her abdominal tenderness and liver disease.[6]  (R. 21.)  Thus, the ALJ considered all the relevant evidence related to Plaintiff's liver disease and explained how such

---

[5] "Ascites is a buildup of fluid in [the] abdomen.  It often occurs as a result of cirrhosis, a liver disease."  *See* https://my.clevelandclinic.org/health/diseases/14792-ascites (last visited September 17, 2021).

[6] "The undersigned finds these opinions [of Drs. Yoakam and Oehlert] partially persuasive but the claimant had some abdominal tenderness at her consultative examination . . . .  That in combination with her live disease caused by hepatitis C, makes sedentary exertion more reasonable."  (R. 21.)

evidence supported the RFC assessment.  *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence.").  Notably, Plaintiff fails to point to any evidence other than her own assertions to support the additional liver disease-related limitations she claims.

### 3.      Step-Three Moderate Mental Limitations

Plaintiff next argues that the ALJ failed to incorporate her moderate limitation in concentrating, persisting, or maintaining pace into the RFC assessment.  (ECF No. 13 at 7.)  In assessing Plaintiff's mental impairments under the "paragraph B" criteria at step three, the ALJ summarized Plaintiff's function report and concluded that she had no extreme or marked limitations.  Rather, the ALJ found Plaintiff had moderate limitations in the areas of

- interacting with others and
- concentrating, persisting, or maintaining pace,

and mild limitations in areas of

- understanding, remembering, or applying information and
- adapting or managing oneself.

(R. 15-16.)  Accordingly, the ALJ determined that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria.  (*Id.*)

Plaintiff asserts that the ALJ failed to include "his own mental restrictions" in the RFC, fatally impairing the step-five process.   (ECF No. 13 at 7.)  However, an ALJ is not necessarily bound by his step-three findings when determining a claimant's RFC, because "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p at *4.  Furthermore, "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional

limitation for the purposes of the RFC assessment." *Vigil v. Colvin,* 805 F.3d 1199, 1203 (10th Cir. 2015).

In this case, it is evident that the ALJ accommodated Plaintiff's moderate difficulty in concentration, persistence, or maintaining pace by restricting her instructions, tasks, and skill level in the RFC assessment—even if he did not specifically reference his findings from step three.  The Tenth Circuit has held that "moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving 'simple tasks with some detail.'" *Orso v. Colvin,* 658 F. App'x 418, 420 (10th Cir. 2016) (unpublished).[7]  Therefore, by including a similar limitation to "simple and some tasks of intermediate level difficulty" in the RFC assessment (R. 17), the ALJ accounted for the moderate limitation he identified at step three.  Moreover, because the record is devoid of psychologically based limitations from Plaintiff's medical sources, the connection between the ALJ's step-three finding of moderate limitation in concentrating, persisting, or maintaining pace and the mental limitations he included in the RFC assessment is obvious.  *See Parker v. Comm'r,* 772 F. App'x 613, 616 (10th Cir. 2019) (unpublished) ("[W]e have held that the [ALJ] can sometimes account for mental limitations by limiting the claimant to particular kinds of work . . . Unless the connection (between the limitation and the work) is obvious, however, the [ALJ] must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion.") (citing *Vigil,* 805 F.3d at 1203-04 and *Wayland v. Chater,* No. 95-7029, 1996 WL 50459, at *2 (10th Cir. 1996)).

---

[7] Pursuant to 10th Cir. R. 32.1(A), the unpublished cases cited herein are not precedential but are cited for their persuasive value.

4.      **Consistency Analysis**

Plaintiff contends that the ALJ erred in evaluating her symptoms because he did not discuss the required factors, ignored probative evidence related to her memory loss and left hand, and improperly relied on her failure to seek treatment in discounting her symptoms.  (ECF No. 13 at 6-7,13-14.)

The ALJ is required to consider Plaintiff's subjective complaints, or symptoms, in determining the RFC.  20 C.F.R. § 416.929(a) & (d)(4); *see also* 20 C.F.R. § 416.902(n) (defining "symptoms" as the claimant's "own description of [her] physical or mental impairment").  When evaluating a claimant's symptoms, the Commissioner uses at two-step process.[8]  SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also generally* 20 C.F.R. § 416.929.  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged.  SSR 16-3p at *3.  Second, once such impairment(s) are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work.  *Id*. at *4.  Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms.  *Id*. at

---

[8] Tenth Circuit precedent has characterized this as a three-step process.  *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).  The analysis under SSR 16-3p comports with this process, *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished), although the term "credibility" is no longer used, SSR 16-3p at *2.

*7-8.  The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)).  The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms."   SSR 16-3p at *10. Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence."  *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The undersigned Magistrate Judge finds no error in the ALJ's consistency analysis.  In his written decision, the ALJ summarized Plaintiff's function report and administrative hearing testimony.  (R. 17-18.)  As relevant to this appeal, the ALJ specifically acknowledged Plaintiff's testimony that she experiences pain, hand numbness, and memory problems, and that she is unable to use her left hand.  (*Id.*)  The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record, noting that her allegations of disabling pain or functional limitation were not supported by the totality of the evidence and that her treatment history was not indicative of someone with her alleged level of pain and limitation.  (R. 18-19.)  In reaching these conclusions, the ALJ discussed several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including:  (i) her primary care providers' normal mental status and physical examinations before and after the alleged onset date; (ii) Dr. Carroll's normal mental status examination; (iii) the state agency psychiatrists' finding that Plaintiff did not have a medically determinable mental impairment; (iv) the lack of mental health treatment where Plaintiff

simply takes medication for anxiety and depressions as prescribed by her primary care provider since January 2019; (vi) her hepatitis C was noted as asymptomatic; and (vii) the lack of emergent care for hepatitis C or cirrhosis.  (R. 18-22.)

Plaintiff asserts that the ALJ failed to consider the factors in 20 C.F.R. § 416.929(c)(3)[9] and SSR 16-3p and failed to link the consistency findings to the evidence in the record.  (ECF No. 13 at 13.)  However, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's symptoms.  *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).  As set forth above, the ALJ provided numerous reasons, supported by the record, for finding Plaintiff's symptoms were not as severe or functionally limiting as alleged.  The ALJ thus linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, as well as SSR 16-3p and the regulation.

Plaintiff further asserts that the ALJ relied on her failure to seek treatment as a basis for discounting her symptoms without considering whether she had an acceptable reason for limited treatment.  (ECF No. 13 at 6-7.)  A claimant's symptoms may be inconsistent with the overall evidence of record "if the frequency or extent of the treatment sought by [a claimant] is not comparable with the degree of the [claimant's] subjective complaints, or if the [claimant] fails to follow prescribed treatment that might improve symptoms . . . ."  SSR 16-3p at *9.  However, the ALJ will not find a claimant's symptoms "inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment . . . ."  *Id.*  One such reason is that "[a]n individual may not be able to afford treatment and may

---

[9] Plaintiff actually references 20 C.F.R. § 404.1529, which relates to claims under Title II of the Act, but the factors in § 404.1529(c)(3) are the same as those in § 416.929(c)(3).

not have access to free or low-cost medical services." *Id*. at \*10; *see also Miranda v. Barnhart,* 205 F. App'x 638, 642 (10th Cir. 2005) (unpublished) (holding that an inability to afford treatment "may be a legitimate reason for [a claimant's] failure to seek treatment.").

In this case, Plaintiff and her counsel explained that she did not pursue treatment for hepatitis C or liver cirrhosis beyond an initial consultation in May 2017 and did not initiate treatment for her more recent memory loss and tremors due to lack of insurance. (R. 32, 42, 46-47, 56-59.) While Plaintiff claims the ALJ failed to consider her lack of insurance as a reason for her limited treatment, the ALJ specifically noted Plaintiff did not have the funds to obtain treatment for her hepatitis C or liver cirrhosis after May 2017 and then further noted Plaintiff also did not need emergency treatment for these impairments. (R. 22.) Additionally, despite Plaintiff's lack of insurance, she was treated for hepatitis C in 2019, had appointments with her primary care providers in 2018 and 2019, and was in the process of arranging further treatment at the time of the administrative hearing. (R. 33-35, 56-58, 321-22, 354-69, 371.) Thus, there is no indication that Plaintiff sought and was refused treatment due to her inability to pay. *See, e.g., Mann v. Astrue,* 284 F. App'x 567, 571 (10th Cir. 2008) (unpublished) ("While [Plaintiff] claims that her poverty prevents her from seeking further medical care or prescription pain medication, she has provided no evidence that she . . . has 'been denied medical care because of her financial condition.'" (quoting *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) and citing *Threet v. Barnhart,* 353 F.3d 1185, 1191 n.7 (10th Cir. 2003) as "indicating 'that inability to pay may provide a justification for [the] claimant's failure to seek treatment' when there is evidence that the claimant sought and was refused treatment"). Furthermore, at the administrative hearing, the ALJ conveyed that Tulsa Pharmacy provides low-cost medications to Tulsa residents who can demonstrate financial and medical need. (R. 43.) *See, cf., Qualls,* 206 F.3d at 1373 (rejecting

16

argument that ALJ could not consider the failure to seek medical treatment where ALJ specifically determined that free medical care was available).  In any event, Plaintiff's failure to seek medical care was not the sole reason the ALJ discounted her symptoms.  As set forth above, the ALJ provided numerous reasons for finding Plaintiff's symptoms were not as severe or functionally limiting as she alleged.

**B.     The ALJ's Step-Five Determination is Supported by Substantial Evidence.**

Plaintiff asserts the ALJ's findings at step five are not supported by substantial evidence, because there is a conflict between the moderate limitation in concentrating, persisting, or maintaining pace the ALJ identified at step three and the document preparer job the ALJ and VE identified at step five.  (ECF No. 13 at 7-8.)  In light of this conflict, Plaintiff further contends that the remaining jobs the ALJ and VE identified, semiconductor bonder and touch up screener, do not constitute a significant number of jobs in the national economy.  (ECF No. 13 at 8-9.)

Because Plaintiff met her burden of showing she did not have any past relevant work, the Commissioner had the burden "at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart,* 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)).  To exist in the "national economy," such work must exist "in significant numbers either in the region where [a claimant] lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(a).  Whether (1) work exists in the immediate area in which claimant lives; (2) a specific job vacancy exists for her; or (3) she would be hired if she applied for work—all are irrelevant to the significant numbers inquiry.  20 C.F.R. § 416.966(a).

At the administrative hearing, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE identified three sedentary, unskilled jobs a hypothetical person with the same age, work history, and education as Plaintiff could perform:

document preparer, semiconductor bonder, and touch up screener.  (R. 65-67.)  The VE testified that there were an estimated 31,000 document preparer jobs, 21,000 semiconductor bonder jobs, and 37,000 touch up screener jobs in the national economy.  (R. 67.)  The ALJ adopted the VE's testimony that Plaintiff could perform these jobs and determined that they existed in significant numbers in the national economy.  (R. 22-23.)

### 1.    Reasoning Level

Plaintiff argues a conflict exists between the ALJ's step-three finding that Plaintiff was moderately limited in concentrating, persisting, or maintaining pace, and the document preparer job because the DOT assigns the document preparer job a reasoning level of three.  *See* Dictionary of Occupational Titles ("DOT") § 249.587-018 (4th ed. 1991).  A job with a reasoning level of three requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving concrete variables in or from standardized situations."  *Id.*

Although the Tenth Circuit has stated that an RFC "limitation [to simple and routine work tasks] seems inconsistent with the demands of level-three reasoning," *Hackett,* 395 F.3d at 1176, Plaintiff was not limited to simple and routine work.  Rather, the RFC in this case states that Plaintiff "can understand, remember and carryout simple or intermediate level instructions, and perform simple and some tasks of intermediate level difficulty under routine supervision, such that she is capable of doing simple or semi-skilled work."  (R. 16-17.)  Plaintiff does not contend that there is a conflict between the actual RFC found in this case and level-three reasoning, and there is none.  As noted above, the undersigned has already found that the ALJ properly accounted for his step-three findings in the RFC.  There is, therefore, no conflict between the ALJ's step-three findings and the job of document preparer.

## 2.      Significant Number of Jobs

Plaintiff contends that the 58,000 total semiconductor bonder and touchup screener jobs the ALJ and VE identified at step five do not constitute a significant number of jobs in the national economy.  (ECF No. 13 at 8-9.)  This contention rests on the assumption that Plaintiff is precluded from performing the document preparer job.  Plaintiff does not contend that the combined total of all three jobs the ALJ identified at step five (89,000) is insignificant.  As the undersigned has rejected Plaintiff's arguments regarding the job of document preparer, Plaintiff's contention regarding the number of jobs necessarily fails, as well.

## VI.     Conclusion and Recommendation

In sum, the ALJ's decision indicates that he considered the entire record and evaluated the evidence in accordance with the appropriate standards.  The ALJ applied the correct legal standards, and his decision is supported by substantial evidence.  Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this Report and Recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 6, 2022.

If specific written objections are timely filed, Rule 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule," which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v.*

*One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 23rd day of December, 2021.


_____
**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**